## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LUIS A. RIVERA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19 C 5701 |
| v. | ) | |
| | ) | |
| CITY OF NORTH CHICAGO, | ) | |
| ELIZABETH BLACK, AND LAZARO PEREZ, | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Luis A. Rivera sued his former employer the City of North Chicago (the "City"), the City's Director of Human Resources, Elizabeth Black, and the City's Chief of Police, Lazaro Perez (together, "Defendants"), under the Americans with Disabilities Act and the Illinois Mental Health and Developmental Disabilities Confidentiality Act (the "Confidentiality Act," or the "Act") in connection with the alleged disclosure of certain confidential medical information. Defendants moved to dismiss Mr. Rivera's complaint under Federal Rule of Civil Procedure 12(b)(6). R. 27. For the following reasons, that motion is granted in part, and denied in part.

## Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Mr. Rivera was employed by the City as a police officer from September 2002 until July 2018. R. 26 ¶¶ 7, 8. At all relevant times, Elizabeth Black served as the City's Director of Human Resources, and Lazaro Perez served as the City's Chief of Police. *Id.* ¶¶ 9, 10.

According to the complaint, Mr. Rivera experienced trauma on the job and was diagnosed with "certain psychiatric conditions" as a result. *Id.* ¶¶ 11-12. On or about March 28, 2018, Mr. Rivera informed the City that he was experiencing "severe emotional and physical anguish," and sought a reasonable accommodation. *Id.* ¶ 13. To address Rivera's request, the City made inquiries about Mr. Rivera's condition to

2

his health care providers two days later. *Id.* ¶ 14. His health care providers responded with the information sought in April 2018. *Id.* ¶ 15. According to Mr. Rivera, "[i]n further response to the Employer's requests for information, and at [Mr. Rivera's] request," his providers "also provided additional medical information about [Mr. Rivera's] medical condition and treatment, in order to facilitate the interactive process" and "help the employer better understand his condition, limitations, and need for accommodations." *Id.* Mr. Rivera's employment with the City terminated in July 2018.[1] *Id.* ¶ 16.

That August, the City received a subpoena from a lawyer representing Mr. Rivera's ex-wife, requesting in pertinent part:

> Personnel Records for Luis Rivera for the period beginning January 1, 2015 to date, including, but not limited to: personnel and/or employee evaluations, records reflecting leave of absence or sickness, vacation days exercised, disciplinary records, resignation and/or termination notices.

*Id.* ¶ 17 and Ex. B at 4. According to the complaint, Ms. Black responded to the subpoena, deliberately including in her response confidential medical communications, records and information without Mr. Rivera's authorization or consent. *Id.* ¶¶ 21, 23. Also according to the complaint, Ms. Black did so at the direction and/or with the consent or assistance of Mr. Perez. *Id.* ¶ 22.

As a result of these disclosures, Mr. Rivera alleges that he has experienced and continues to experience extreme shock, indignation, betrayal, humiliation, dismay, and emotional distress. *Id.* ¶ 24. Defendants still possess Mr. Rivera's confidential

---

[1] The circumstances of Mr. Rivera's separation from employment are not at issue.

medical information, and Mr. Rivera alleges that it is "highly likely" that they will continue to maintain, use, and disclose it. *Id.* ¶ 25.

The complaint purports to allege four claims arising from this disclosure: one count of unlawful maintenance and disclosure of confidential medical information under the ADA (Count I as to the City); and three counts of unlawful disclosure of records and communications under the Confidentiality Act (Count II as to the City, and Counts III and IV as to Ms. Black and Mr. Perez, respectively).

## Analysis

### I. ADA Claim (Count I)

The ADA permits an employer to gather information about an employee's medical condition or history in order to (among other things) "make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B)(2). The ADA requires that information obtained through such an inquiry be "treated as a confidential medical record," and disclosed only under circumstances that are not relevant here. *Id.* §§ 12112(d)(3)(B), (d)(4)(C). On the other hand, if the employee's information is obtained because of the employee's own voluntary disclosure or otherwise outside of the context of an ADA inquiry, the ADA's confidentiality provisions do not attach. *See EEOC v. Thrivent Fin. for Lutherans*, 795 F. Supp. 2d 840, 843 (E.D. Wis. 2011) ("courts have consistently held that the confidentiality requirements of [§ 12112(d)(4)] do not protect medical information that is voluntarily disclosed by the employee and, thus, is not acquired as a result of a medical inquiry by the employer."); *see also Taylor v. City of Shreveport*, 798 F.3d 276, 288 (5th Cir.

4

2015) ("§ 12112(d) prohibits an employer from disclosing an employee's medical information *only if* the employer first acquired the information *as a result of a medical inquiry or examination*," so [i]f the employee voluntarily divulges the medical information to the employer . . . or if the employer otherwise obtains the medical information outside the context of a medical inquiry or examination, then the employer has no duty under § 12112(d) to keep that information confidential.") (emphasis in original). Accordingly, to state a claim for disclosure of confidential information under the ADA, a plaintiff must allege that: (1) his employer obtained his medical information through an employment-related medical inquiry; (2) that information was disclosed rather than treated as confidential, and (3) he suffered a tangible injury from the disclosure. *Shoun v. Best Formed Plastics, Inc.*, 28 F. Supp. 3d 786, 788-89 (N.D. Ind. 2014).

Defendants contend that Count I under the ADA fails because: (1) the information disclosed was volunteered to them by Mr. Rivera, not obtained through an employment-related "inquiry"; (2) the information was disclosed outside of the employment context, and therefore is not protected by the ADA; and (3) the complaint does not allege that Mr. Rivera suffered a tangible injury as a result of the disclosure. The Court takes each in turn.

***Voluntary disclosure.*** Defendants argue at the outset that the information disclosed in response to the subpoena was not protected by the ADA's confidentiality provisions because it was volunteered by and/or obtained at Mr. Rivera's, not Defendants', request. Defendants point to the complaint's allegations that: (1) Mr.

5

Rivera "reported to [the City] that he was experiencing severe emotional and physical anguish, among other ailments," R. 26 ¶ 13; and (2) "at [Mr. Rivera]'s request, [Mr. Rivera]'s health care providers also provided additional medical information about [Mr. Rivera]'s medical condition and treatment," *id.* ¶ 15.

The Court agrees that these allegations suggest that Mr. Rivera provided some information to Defendants voluntarily. But neither requires dismissal. The first— that Mr. Rivera reported suffering "severe emotional and physical anguish"—is too vague to remove any medical information shared by his health care providers thereafter from the ADA's confidentiality protections. To hold otherwise would chill the interactive process, and run afoul of the ADA's purpose. *See Doe v. Postal Serv.*, 317 F.3d 339, 344 (D.D.C. 2003) (employees need not "choose between waiving their right to avoid being publicly identified as having a disability and exercising their statutory rights . . . to reasonable accommodations . . . that may depend on disclosure of their medical conditions;" holding otherwise would run "directly counter to Congress's purpose in enacting the ADA").

Instead, the Court concludes that Mr. Rivera's "report" triggered the City's right to make "inquiries into the ability of [Mr. Rivera] to perform job-related functions" in the first place. 42 U.S.C. § 12112(d)(4)(B)(2). Those inquiries in turn triggered the City's confidentiality obligations. *See id.* §§ 12112(d)(3)(B), (d)(4)(C) (requiring that information obtained via such an inquiry be "treated as a confidential medical record"). As the Seventh Circuit explained in *EEOC v. Thrivent Financial for Lutherans*, "an employer must *already know* that an employee is ill or physically

incapacitated before initiating the interaction for the interaction to be considered an inquiry" and trigger the ADA's confidentiality provisions. 700 F.3d 1044, 1051-52 (7th Cir. 2012) (emphasis added). Mr. Rivera's "report" provided Defendants with just that knowledge. *See Doe*, 317 F.3d at 344 (supervisor's letter asking employee to explain the nature of his illness was an "inquiry" triggering confidentiality obligations because employer knew employee had taken weeks of sick leave, despite that employer did not know employee's precise condition).

Defendants nevertheless argue that *Thrivent* requires dismissal here, because like the employer in *Thrivent*, the City did not "know that [Mr. Rivera] was ill" when it initially contacted his provider, and in fact "actually doubted" that he was sick. *See* R. 37 at 3-4. Defendants seem to be arguing that unless an employer has verification of the illness, any employer-initiated interactions that follow cannot be an "inquiry" under the ADA. But this argument is nonsensical and would defeat the purpose and necessity of such an inquiry altogether. *Thrivent* does not support such an argument, and in any case is easily distinguished. In *Thrivent*, the employer emailed an employee who was absent without notice, indicating that it needed to know "what is going on." *Thrivent*, 700 F.3d at 1046. The employee disclosed his migraine condition and details about the cause and his treatment in response. *Id.* at 1047. The employee suspected that the employer had disclosed this information to other potential employers, and the EEOC brought an action on his behalf. *Id.* at 1046. The court held that the employer's email was not an "inquiry" within the meaning of the ADA and therefore that no confidentiality obligations attached to the information the employee

7

disclosed, because there was "no evidence in the record suggesting that [the employer] should have inferred that [the employee's] absence . . . was due to a medical condition." *Id.* at 1052 ("For all [the employer] knew, [the employee's] absence was just as likely due to a non-medical condition as it was due to a medical condition."). In contrast, as discussed, Mr. Rivera alleges and Defendants do not dispute that Defendants interacted with Mr. Rivera's health care providers *because of* his report that he suffered "severe emotional and physical anguish." *See* R. 26 ¶ 14 (alleging that "[a]s a result [of Mr. Rivera's report], on or about March 30, 2018, the employer made medical inquiries about [Mr. Rivera]'s medical condition to [Mr. Rivera]'s health care providers."). As such, Mr. Rivera's "report" offered the "evidence" from which the City could infer that Mr. Rivera suffered from a medical condition, and therefore serves to bolster, not doom, his ADA claim.

Despite Defendants' urging, nor does the second allegation—that Mr. Rivera's health care providers offered "additional medical information about Plaintiff's medical condition and treatment" at Mr. Rivera's "request"—require dismissal. R. 27 ¶ 4 and R. 28 at 5 (citing R. 26 ¶ 15). First, it seems obvious that both Defendants and Mr. Rivera might request medical information from Mr. Rivera's providers to facilitate the interactive process. And Defendants cite nothing to indicate that Mr. Rivera's doing so in the context of an ADA "inquiry" would somehow destroy confidentiality.

But Defendants also point to two exhibits that they attached to a previous motion to dismiss an earlier version of Mr. Rivera's complaint to support their

8

argument that the information regarding Mr. Rivera's diagnosis and treatment was disclosed at Mr. Rivera's direction, not theirs, and therefore that the ADA does not require that it be kept confidential.[2] Generally, only the complaint and any attachments thereto may be considered in ruling on a motion to dismiss. The exception—allowing the court to consider documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to his claim"—is a narrow one. *88 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

Here, Exhibit A includes a list of questions Defendants apparently gave to Mr. Rivera to provide to his health care providers after he requested an accommodation. R. 37, Ex. A at 2-4. Exhibit A does not reflect what, if any, responses Defendants received. According to Defendants, Exhibit B includes a revised version of that same inquiry, with modifications and additions by Mr. Rivera. R. 37, Ex. B at 2-5. Among other things, Exhibit B asks directly for "Sergeant Rivera's medical diagnosis/ailment(s)" and for his "medical treatments," whereas Exhibit A does not directly ask for either. *Compare id.* at 2-3, *with* R. 37, Ex. A. Exhibit B also reflects wholesale redactions of the responses to each question, as well as a cover letter from Ms. Black to one of Mr. Rivera's health care providers, asking: (1) if the responses were made by the provider; and (2) whether Mr. Rivera had informed the provider that he had made certain changes to the form. *See generally* R. 37, Ex. B. A

---

[2] Mr. Rivera contends that because Exhibits A and B were not attached to the motion at issue, they are not properly before the Court. R. 36 at 2. But as noted, both were docketed previously, *see* R. 13, and Mr. Rivera's response brief makes clear that he is familiar with their contents. Defendants also attached the exhibits to their reply brief on this motion. Accordingly, the Court will not disregard the exhibits on this basis.

handwritten response appears under this inquiry, stating: "I did complete this form and he did tell me he added questions." *Id.* at 1. The response appears to bear the provider's signature. *Id.*

Defendants argue that the exhibits make clear that it was Mr. Rivera, not Defendants, who asked Mr. Rivera's provider to disclose his condition and treatment. And Defendants contend that it is proper for the Court to consider the exhibits here, because the complaint refers to the communications with Mr. Rivera's health care providers, and his claim of improper disclosure depends on them. In response, Mr. Rivera concedes that Exhibit A is expressly referenced in the complaint. R. 36 at 3 (citing R. 26 ¶ 14 ("As a result, on or about March 30, 2018, the employer made medical inquiries about Plaintiff's medical condition to Plaintiff's health care providers.")). But he argues that neither exhibit should be considered at this stage because the provider's responses are the only aspects relevant to his claim, and they are omitted.[3] Mr. Rivera contends that the exhibits therefore go more to the City's defense of voluntariness than to his own claim.

Ultimately, however, the result is the same whether or not the Court considers the exhibits in construing the complaint. It simply is not possible to determine without further development of the record whether the information the City obtained and ultimately disclosed was received as a result of the City's own inquiries, Mr.

---

[3] Defendants offer to produce the documents in their unredacted forms in their reply brief. But because as discussed *infra* it remains unclear who requested what from whom and when, and what was disclosed in response to each such request, this also would not resolve the issue.

Rivera's requests, or some combination of the two. Nor is there any assurance that the exhibits at issue were the only inquiries directed to Mr. Rivera's providers. As such, whether the City "learned of [Mr. Rivera's] medical condition solely through . . . employment-related medical inquiries or learned that information outside the context of those inquiries presents a question of fact not appropriate for resolution in a motion to dismiss." *Shoun*, 28 F. Supp. 3d at 792.

Moreover, even assuming the protected information was disclosed in response to questions posed by Mr. Rivera alone, neither side addresses what effect (if any) the fact that the City initiated the conversation with Mr. Rivera's health care provider has on the analysis. Indeed, by any reading of the complaint, the provider's disclosures were made only *after* Mr. Rivera requested an accommodation and his employer initiated an ADA inquiry. The exhibits do not suggest otherwise. Accordingly, those disclosures—even if made in response to Mr. Rivera's, rather than his employer's questions—arguably occurred in the context of that inquiry and are protected. *Cf. Kingston v. Ford Meter Box Co., Inc.*, 2009 WL 981333, at *11 (N.D. Ind. Apr. 10, 2009) (employee disclosure was voluntary when made before discussing with employer his need for reasonable accommodations); *Ross v. Advance Am. Cash Advance Centers, Inc.*, 605 F. Supp. 2d 1025, 1032-33 (E.D. Ark. 2009) (employee "disclosure was voluntary when it was done to explain why she requested time off rather than pursuant to an inquiry into her ability to perform job-related functions"). The Court declines to dismiss Count I on this basis.

***Connection to employment.*** Defendants next argue that dismissal is proper because the ADA was meant to prevent workplace discrimination, and that any disclosure in this case was made outside of the employment context and therefore is not protected. Defendants are correct that the complaint alleges that the improper disclosure occurred after Mr. Rivera's employment ended. But the ADA imposes no time limits on an employer's confidentiality obligations, and courts and the EEOC have held that those obligations survive termination. *See* 42 USC § 12112; *see also In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 950 (D. Minn. 2015) ("The confidentiality requirement remains in effect regardless of whether . . . the employment relationship ends.") (citing *Bennett v. Potter*, 2011 WL 244217, at *4 (E.E.O.C. Jan. 11, 2011)); *Heston v. Underwriters Labs., Inc.*, 297 F. Supp. 2d 840, 845 (M.D. NC, 2003) ("The portions of the statute mandating the confidentiality of certain medical information set no time limits on the period of confidentiality."). Defendants cite no authority to the contrary.

***Tangible injury.*** Finally, Defendants contend that Count I must be dismissed because the City has failed to allege a tangible injury as a result of what is at most a mere "technical violation" of the ADA. According to Defendants: (1) Mr. Rivera's generalized claim of emotional distress is insufficient to constitute a tangible injury; and (2) a tangible injury is implausible because Defendants disclosed the information in response to a valid subpoena.

The Court rejects Defendants' suggestion that emotional distress cannot constitute a tangible injury for purposes of an ADA disclosure claim; the caselaw is

to the contrary. *See Shoun*, 28 F. Supp. 3d at 790 (rejecting argument that plaintiff failed to allege a tangible injury in ADA disclosure suit because plaintiff alleged only an emotional injury); *see also EEOC v. Ford Motor Credit Co.,* 531 F. Supp. 2d 930, 942 (M.D. Tenn. 2008) (allegations that plaintiff suffered "shame, embarrassment, and depression as a result of the disclosure of his [medical condition] to his coworkers" were "tangible injuries."); *Green v. Joy Cone Co.,* 278 F. Supp. 2d 526, 537 (W.D. Pa. 2003) ("Injury-in-fact encompasses both actual damages in the form of emotional, pecuniary, compensative, or otherwise, as well as the presence of a continuing illegal practice."). No case Defendants rely upon holds otherwise. Indeed, at most, Defendants' cases establish that a plaintiff must have *evidence* of emotional distress damages to survive summary judgment.[4] *See Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 519-20 (3d Cir. 2001) (granting summary judgment to employer on ADA disclosure claim because plaintiff "submitted no evidence as to the actual existence" of the alleged "mental/emotional distress, mental anguish, stress and inconvenience"

---

[4] In their reply brief, Defendants also contend that Mr. Rivera improperly relies upon 42 U.S.C. § 1981a as a basis for compensatory damages in the context of his ADA disclosure action. But the only authority Defendants cite held that compensatory and punitive damages are not available for an ADA *retaliation* claim, and expressly stated that both are available for a claim brought under Section 12112. *See Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 965 (7th Cir. 2004) ("Section 1981a(a)(2) permits recovery of compensatory and punitive damages (and thus expands the remedies available under § 2000e–5(g)(1)) only for those claims listed therein. With respect to the ADA, § 1981a(a)(2) only lists claims brought under §§ 12112 or 12112(b)(5). Because claims of retaliation under the ADA (§ 12203) are not listed, compensatory and punitive damages are not available for such claims.").

he claimed to have suffered because of the disclosure). This is not a basis to dismiss Mr. Rivera's claim.[5]

Next, Defendants make a relatively undeveloped argument that disclosure was permissible here because it was pursuant to a valid subpoena, and the ADA does not impose any privilege from disclosure in discovery in a civil case. According to Defendants, any claim of tangible injury is therefore inconceivable, because Mr. Rivera's attorney presumably received notice of the subpoena before Defendants responded, Defendants had no legal basis to object to the subpoena, and Mr. Rivera already disclosed the information to Defendants in any case.

"There are few cases 'addressing whether the ADA confidentiality provisions apply to the discovery of medical information and documents in civil litigation.' " *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d at 950 (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453,* 190 F.R.D. 583, 586 (D. Kan. 1999)). The ADA and its regulations set forth just three exceptions to the general rule of confidentiality, none of which concern subpoenas. *See* 42 U.S.C. §

---

[5] Defendants also contend that the complaint unjustifiably seeks injunctive relief "to avoid dismissal based on the absence of a tangible injury." *See* R. 28 at 10-11. According to Defendants, Mr. Rivera cannot seek injunctive relief based on the single disclosure at issue in this case that caused no tangible injury. *Id.* at 11. But as noted, Mr. Rivera has sufficiently alleged a tangible injury via his allegations of emotional distress. He also alleges that Defendants still hold his medical information and argues that they see no problem with its disclosure. The Court agrees that the chances of future disclosure seem remote. But Mr. Rivera's allegations of past harm and potential for future harm are enough to support a prayer for injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (plaintiff seeking injunctive relief must "show that he has sustained *or* is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct.") (emphasis in original).

12112(d)(3)(B); 29 C.F.R. § 1630.14(c)(1) (providing exceptions for disclosures to supervisors and first aid and safety personnel for accommodation and emergency treatment purposes, and to government officials investigating ADA compliance). But Defendants are correct that courts that have considered the issue have held that the ADA's confidentiality requirements do not amount to a "privilege" that protects covered information from disclosure in all circumstances. *See Scott*, 190 F.R.D. at 586 ("the ADA's prohibitions against disclosure of medical information do not amount to a 'privilege' that protects the requested documents from disclosure"); *see also In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d at 952 (same). Nevertheless, courts generally have considered the purpose behind the ADA's confidentiality provisions in deciding whether confidentiality concerns prevail over principles of liberal discovery, and have noted that the ADA's confidentiality provisions themselves dictate that protected information may only be used in a manner consistent with the statute. *See Scott*, 190 F.R.D. at 587 (permitting disclosure of the confidential information because it effectuated the purpose of the ADA by permitting the plaintiff to establish her failure-to-accommodate claim); *see also In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d at 951 (citing 42 U.S.C. § 12112(d)(3)(C)). It should come as no surprise, then, that such courts generally permit discovery of confidential information when an employer attempts to use the ADA's confidentiality provisions as a shield in litigation. *See Scott*, 190 F.R.D. at 586 (granting *plaintiff-employee's* motion to compel certain medical records in support of ADA reasonable accommodation action); *see also In re*

*Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d at 948 (permitting discovery by *plaintiff* hockey players of de-identified medical information in spite of defendant hockey league's efforts to resist discovery under ADA confidentiality provisions). Indeed, "Congress never intended for a defendant charged with violating the ADA to use the ADA's confidentiality provisions to impede a plaintiff's ability to discover facts that might help the employee establish his/her claims." *Scott*, 190 F.R.D. at 587.

Here, even assuming the subpoena was valid and the documents at issue were responsive (both of which Mr. Rivera disputes), there can be no argument that the use of Mr. Rivera's confidential medical information furthers the ADA's purpose. Indeed, unlike the cases Defendants rely upon, Mr. Rivera seeks relief that would further the protection of covered information, not its disclosure. And that is consistent with the ADA's purpose. Defendants' motion to dismiss Count I is therefore denied.

## III.    Confidentiality Act Claims (Counts II-IV)

Defendants argue that Mr. Rivera's claims under the Confidentiality Act fail because: (1) as Mr. Rivera's former employers, Defendants are not among those to whom the Confidentiality Act applies; (2) the information disclosed was not the type protected by the Confidentiality Act; (3) Mr. Rivera voluntarily disclosed this information and therefore waived his right to confidentiality even assuming the information was protected; and (4) the individual defendants have immunity under the Illinois Tort Immunity Act. The Court addresses these arguments in turn.

16

***Whether the Act applies to Defendants.*** The Confidentiality Act provides that:

> All records and communications shall be confidential and shall not be disclosed except as provided in this Act. Unless otherwise expressly provided for in this Act, records and communications made or created in the course of providing mental health or developmental disabilities services shall be protected from disclosure regardless of whether the records and communications are made or created in the course of a therapeutic relationship.

740 ILCS § 110/3(a).

Citing this provision, Defendants argue that because they were never in a therapeutic relationship with Mr. Rivera and never provided him with mental health services, the Confidentiality Act does not apply to them. In response, Mr. Rivera contends that the Act's reach is broader, pointing to Section 5(d), which states:

> No person or agency to whom any information is disclosed under this Section may redisclose such information unless the person who consented to the disclosure specifically consents to such redisclosure.

*Id.* § 110/5(d). Defendants counter that this section makes redisclosure of confidential information actionable only if the initial disclosure was made with the consent of the recipient of therapeutic services (here, Mr. Rivera). *See* R. 37 at 7. And because Mr. Rivera does not allege that he consented to the *initial* disclosure of his information to Defendants in the manner required by the Act, he cannot seek relief for Defendants' subsequent *re*-disclosure to his ex-wife's attorney. But as noted, the complaint does suggest that some disclosure to Defendants was done with Mr. Rivera's permission. *See* R. 26 ¶¶ 13, 15. And Defendants' reading is inconsistent with the purpose of the Act and the case law interpreting it in any case. *See* 740 ILCS § 110/3(a) (indicating

17

that covered records and communications "shall not be disclosed except as provided in this Act.");[6] *see also Johnson v. Lincoln Christian Coll.*, 501 N.E.2d 1380, 1387 (Ill. App. Ct. 1998) (rejecting the same interpretation of Section 5(d) as one that would "defeat[ ] one of the basic purposes" of the Act, and holding that the legislature intended to prohibit redisclosure "regardless of whether consent to the initial disclosure has been given."); *see also Treadwell v. St. Joseph High Sch.*, 1999 WL 753929, at *8 (N.D. Ill. Sept. 15, 1999) ("The Act also prohibits the redisclosure of confidential information without the written consent of the recipient, *even if* the recipient had consented to the initial disclosure.") (emphasis added). Accordingly, this argument fails.

*"Record" or "Confidential Communication."* Defendants next contend that the information disclosed is not a "record" or "communication" to which the statutory privilege applies because it was not made by Mr. Rivera to a therapist, but rather was generated at Mr. Rivera's request to facilitate the ADA's interactive process. R. 28 at 13-14. But the Court disagrees with Defendants' narrow interpretation of these definitions. Indeed, and despite Defendants' urging to the contrary, the Act does not limit covered "communications" to those made by a recipient of mental health services to a therapist. R. 28 at 12; R. 37 at 10. Instead, covered "communications" include:

---

[6] Defendants point to an Illinois Appellate Court's decision, *Quigg v. Walgreen Company*, in support of their contention that the Act applies only to "those persons entering into a therapeutic relationship with clients." 905 N.E.2d 293, 298 (Ill. App. Ct. 2009). But *Quigg* did not discuss redisclosure under Section 5, so the Court does not find it persuasive.

> [A]ny communication made by a recipient *or other person* to a therapist *or to or in the presence of other persons* during or in connection with providing mental health . . . services to a recipient.

740 ILCS § 110/2 (emphasis added). Further, "communication" expressly "includes information which indicates that a person is a recipient." *Id.* The Act defines "recipient" as "a person who is receiving or has received mental health or developmental disabilities services," and "therapist" as a "psychiatrist, physician, psychologist, social worker, or nurse providing mental health . . . services or any other person not prohibited by law from providing such services or from holding himself out as a therapist if the recipient reasonably believes that such person is permitted to do so." *Id.*

Among other things, the complaint alleges that: Mr. Rivera was "diagnosed with certain psychiatric conditions;" Defendants "made medical inquiries about [Mr. Rivera's] condition;" Mr. Rivera's "health care providers provided the information sought" in response to those inquiries; and Defendants "deliberately divulged confidential medical communications, records and information" without Mr. Rivera's "authorization or consent" in response to Mr. Rivera's ex-wife's subpoena. R. 26 ¶¶ 12, 14-15, 20-23. It is plausible from these allegations that a "communication" was made "to . . . other persons . . . in connection with providing mental health . . . services to" Mr. Rivera, and/or that such communication included "information which indicate[d] that [Mr. Rivera] is a recipient," and therefore that the information is covered under the Act. 740 ILCS § 110/2.

The only case Defendants cite on this point is inapposite; indeed, in *Suarez v. Pierard*, the court merely held that a "routine transaction with a pharmacist" did not constitute or create a "therapeutic relationship" within the meaning of the Act. 663 N.E.2d 1039, 1042 (Ill. App. Ct. 1996). Defendants do not meaningfully argue that Mr. Rivera's health care provider was not a "therapist" within the meaning of the Act, and nor do they argue that the provider and Mr. Rivera lacked a "therapeutic relationship." Accordingly, this argument also fails.

***Voluntary Disclosure.*** Defendants also contend that Mr. Rivera waived any right to confidentiality he had under the Act with respect to the information disclosed to his ex-wife's attorney by requesting its disclosure to Defendants in the first place. Defendants are correct that the patient has the right to waive the Confidentiality Act's protections. *Novak v. Rathnam*, 478 N.E.2d 1334, 1337 (Ill. 1985). But waiver of those protections is recognized in "very limited circumstances," and the Illinois Supreme Court has stated that Section 5 "makes it clear that a recipient may consent to disclosure of information for a limited purpose and that any agency or person who obtains confidential and privileged information may not redisclose the information without the recipient's specific consent." *Norskog v. Pfiel*, 755 N.E.2d 1, 14 (Ill. 2001). As discussed *supra*, it is unclear at this stage what Mr. Rivera requested his provider disclose to Defendants in connection with his request for a reasonable accommodation. Moreover, the Act requires consent to disclosure be made in a specific manner in order to be effective. *See* 740 ILCS § 110/5(b) (setting forth seven requirements for an effective written consent for disclosure). But even if Mr. Rivera

consented to the initial disclosure in that manner, it would not mean that he waived the privilege more generally. *See McGreal v. Ostrov*, 368 F.3d 657, 689 (7th Cir. 2004) ("The release of information for a limited purpose under the consent provision does not operate as a general waiver of the confidentiality privilege."). And Mr. Rivera expressly alleges that he did not authorize redisclosure in response to his ex-wife's subpoena. *See* R. 26 ¶ 23. Accordingly, dismissal is improper on this basis.

***Illinois Tort Immunity Act and Individual Defendants.*** Finally, Defendants claim that Counts III and IV against the individual defendants must be dismissed because the Illinois Tort Immunity Act grants them immunity. But Mr. Rivera correctly points out that those counts seek only declaratory and injunctive relief and attorneys's fees and costs, not damages, so the Tort Immunity Act does not apply. *See* R. 36 at 12-13 (citing 745 ILCS 10/2-101 ("Nothing in this Act affects the right to obtain relief *other than damages* against a local public entity or public employee.") (emphasis added))).

Nevertheless, Defendants argue that it is unclear whether the individual defendants are sued in their individual or official capacities, and if they are sued in their official capacities, Counts III and IV against them should be dismissed as redundant of Count II against the City. *See* R. 37 at 7. Defendants are correct that an action brought against an individual in his official capacity "is tantamount to a claim against the government entity itself." *Guzman v. Sheahan,* 495 F.3d 852, 859 (7th Cir. 2007). Accordingly, when a plaintiff files suit against both a local governmental entity and an individual in his official capacity, the suit against the official is

redundant and subject to dismissal. *Brown v. Chi. Bd. of Educ.*, 973 F. Supp. 2d 870, 875 (N.D. Ill. 2013) (citing *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987)). Counts III and IV are therefore dismissed to the extent filed against the individual defendants in their official capacities.

Defendants also contend that Counts III and IV should be dismissed to the extent they seek injunctive relief from Ms. Black and Mr. Perez in their individual capacities, pointing to *Hill v. Shelander*. *See* R. 37 at 6 (citing *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991) ("injunctive relief against a state official may be recovered only in an official capacity suit")). But Defendants offer no response to Mr. Rivera's arguments that declaratory relief and attorneys's fees and costs remain appropriate. Accordingly, Counts III and IV survive Defendants' motion to the extent they seek declaratory relief and attorneys's fees and costs from Ms. Black and Mr. Perez in their individual capacities.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss, R. 27, is granted to the extent that Counts III and IV were filed against Ms. Black and Mr. Perez in their official capacities, and to the extent those counts seek injunctive relief. But Defendants' motion is otherwise denied. The parties are directed to file a joint status report addressing next steps in this litigation by February 16, 2021.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: February 1, 2021